[No. B209862. Second Dist., Div. Three. Apr. 25, 2011.]

FEI ENTERPRISES, INC., Plaintiff and Appellant, v.
KEE MAN YOON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†This opinion is certified for publication except for parts 1., 2. and 3. of the Factual and
Procedural Background and part A. of the Discussion.

COUNSEL

Law Office of Robert G. Klein and Robert G. Klein for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup and Caroline E. Chan for Defendant and Appellant.

OPINION

ALDRICH, J.—Owner Kee Man Yoon (Yoon) and general contractor Pacific Construction Co., a general partnership et al. (Pacific Construction), refused to pay the low-voltage electrical subcontractor FEI Enterprises, Inc. (FEI), for work performed under two subcontracts. FEI brought this action against Pacific Construction[1] seeking, among other things, breach of contract damages and prompt payment penalties. Pacific Construction responded with a cross-complaint alleging that FEI had breached the subcontracts. The trial court entered judgment for FEI on both its complaint and on Pacific Construction's cross-complaint. Pacific Construction appeals, contending the trial court erred in construing the subcontracts' language. In the unpublished portion of this opinion, we conclude that the trial court did not err in its interpretation of the contractual provisions. We will therefore affirm the judgment.

FEI cross-appeals, contending that the trial court erred in declining to order Pacific Construction to pay prompt payment penalties. In the published portion of this opinion, we hold that the record contained evidence sufficient to support the trial court's finding under Business and Professions Code section 7108.5, subdivision (c), that there was a "good faith dispute" between Pacific Construction and FEI as to the money owed. Determined by an objective standard, this justified Pacific Construction's withholding of progress payments and the denial of the statutory prompt payment penalties. We will therefore also affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Pacific Construction was the general contractor for two separate construction projects, a 19-unit residential building on Gramercy Drive and a seven-unit residential structure on Manhattan Place in Los Angeles (respectively, the

---

[1] FEI also named as defendants Jong Woon Kim; American Continental Bank; International Bank of California; SC USA Corporation, doing business as So CA USA Corp.; and American Contractors Indemnity Company. None of these additional defendants is a party to this appeal.

[2] We recite the facts as reflected by the record on appeal and construed in the light most favorable to the judgment. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 394 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

Gramercy Project and Manhattan Place Project). Defendant Jong Woon Kim was the owner of the Gramercy Project and Yoon was the owner of the Manhattan Place Project.

1.–3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 4. The Trial Court's Ruling

As is relevant here, the trial court ruled, with respect to both parties' breach of contract claims, that FEI did not breach the subcontracts because FEI had completed 90 to 100 percent of the rough installation that fell within its scope of work. Further, FEI was excused from performing the remainder of the subcontracts' work because Yoon terminated FEI's contract. The court also ruled that FEI did not delay the projects because other trades were still performing their rough work after FEI finished. In addition, the court found that, although FEI had properly submitted its requests for payment to Pacific Construction, the latter had breached the subcontracts by failing to process FEI's properly submitted payment requests. The trial court, however, denied FEI's request for prompt payment penalties based upon its finding that a good faith dispute existed as to the sums owed. Pacific Construction appealed and FEI cross-appealed.

## DISCUSSION

### A. Pacific Construction's Appeal*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -

### B. FEI'S Cross-appeal

#### 1. The Prompt Payment Statutes

■ "California has a series of so-called 'prompt payment' statutes that require general contractors to pay their subcontractors within specified, short time periods, and that impose monetary penalties for violations." (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 800 [21 Cal.Rptr.3d 751] (*Tesco Controls*) [involving Bus. & Prof. Code,

---

*See footnote, *ante,* page 790.

§ 7108.5 & Pub. Contract Code, § 7107; see also Civ. Code, § 3260].) These prompt payment statutes serve a " 'remedial purpose: to encourage general contractors to pay timely their subcontractors and to provide the subcontractor with a remedy in the event that the contractor violates the statute.' [Citation.]" (*S&S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 777 [71 Cal.Rptr.3d 828].)

One such statute is Business and Professions Code section 7108.5,[4] which requires a general contractor to pay its subcontractors their respective shares of a progress payment within 10 days of receiving that payment from the project's owner, unless the parties agree otherwise in writing. If the general contractor fails to timely pay, the subcontractor may recover a penalty fixed at 2 percent of the amount due per month for every month the payment is not made. (*Id.*, subd. (b); see also Civ. Code, § 3260[5] & Pub. Contract Code, § 7107.)[6]

---

[4] Unless otherwise indicated, all statutory references are to the Business and Professions Code.

Section 7108.5 reads:

"(a) This section applies to all private works of improvement and to all public works of improvement, except where Section 10262 of the Public Contract Code applies.

"(b) Except as provided in subdivision (c), a prime contractor or subcontractor shall pay to any subcontractor, not later than 10 days after receipt of each progress payment, unless otherwise agreed to in writing, the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein. A prime contractor or subcontractor that fails to comply with this subdivision shall be subject to a penalty, payable to the subcontractor, of 2 percent of the amount due per month for every month that payment is not made as required under this subdivision.

"(c) *If there is a good faith dispute over all or any portion of the amount due on a progress payment from the prime contractor or subcontractor to a subcontractor, the prime contractor or subcontractor may withhold no more than 150 percent of the disputed amount.*

"(d) A violation of this section shall constitute a cause for disciplinary action.

"(e) In any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs.

"(f) The sanctions authorized under this section shall be separate from, and in addition to, all other remedies, either civil, administrative, or criminal." (Italics added.)

In 2009, the Legislature "[r]ecast[]" Business and Professions Code section 7108.5 "for clarity and readability" (Assem. Com. on Business and Professions, Analysis of Sen. Bill No. 821 (2009–2010 Reg. Sess.) as amended June 15, 2009, p. 7), but it did not alter the "good faith dispute" language. (Compare Stats. 1996, ch. 712, § 2, p. 3872, with Stats. 2009, ch. 307, § 72.)

[5] This statute will be repealed effective July 1, 2012, for reasons that appear to be unrelated to the issues presented in this case. (Stats. 2010, ch. 697, §16.)

[6] Similar language is found in Public Contract Code sections 7107, subdivision (e) ("bona fide dispute") and 10262.5, subdivision (a) ("good faith dispute") as well as in Civil Code section 3260, subdivision (e) ("bona fide dispute"). There appears to be no significant or meaningful difference between the terms "good faith" dispute and "bona fide" dispute as utilized in these statutes.

■ However, a contractor may withhold progress payments from a subcontractor without exposure to the 2 percent penalty if there is a good faith dispute between the general contractor and the subcontractor over the amount owed. Specifically, subdivision (c) of section 7108.5 provides that "[i]f there is a *good faith dispute* over all or any portion of the amount due on a progress payment from the prime contractor or subcontractor to a subcontractor, the prime contractor or subcontractor may withhold no more than 150 percent of the disputed amount." (Italics added.) Thus, to deny penalties under this prompt payment statute, the trial court must conclude that the parties had a "good faith dispute" over amounts due on a progress payment. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1339 [35 Cal.Rptr.3d 496] (*Alpha Mechanical*).)

### 2. *Proper Interpretation of the Term "Good Faith Dispute"*

The problem is that the statute does not define the term "good faith dispute" and the parties disagree as to how it is to be interpreted. FEI contends that an objective standard should be applied while Pacific Construction argues that the standard should be subjective; that is, it would be sufficient if Pacific Construction had a good faith *belief* in the merits of its position with respect to its claimed right to withhold payments due to FEI.

*Alpha Mechanical, supra*, 133 Cal.App.4th 1319, was the first court to interpret the good faith standard with respect to Business and Professions Code section 7108.5 and Civil Code section 3260. It stated that "good faith 'suggests a moral quality; its absence is equated with dishonesty, deceit or unfaithfulness to duty.' ([*Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203, 211 [117 Cal.Rptr. 601]].) . . . In *People v. Nunn* [(1956) 46 Cal.2d 460 [296 P.2d 813]], the California Supreme Court stated that '[t]he phrase "good faith" in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.' [Citation.]" (*Alpha Mechanical, supra*, 133 Cal.App.4th at p. 1339, citation omitted; see also *Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc.* (2009) 179 Cal.App.4th 1401, 1411, fn. 5 [102 Cal.Rptr.3d 419] [involving Pub. Contract Code, § 7107].)

The *Alpha Mechanical* court went on to discuss the very practical problem created by its perceived need to look into a "subjective state of mind." It

stated that " '[g]ood faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind. [Citations]: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence.' [Citation.]" (*Alpha Mechanical, supra*, 133 Cal.App.4th at p. 1339.) Thus, if good faith is to be measured by a subjective standard, as the *Alpha Mechanical* court concluded, determining its existence is a factual question requiring the examination of *objective* circumstantial evidence that would permit an inference as to a subjective state of mind. In *Alpha Mechanical*, the court concluded, however, that the *absence* of such objective evidence of bad faith was sufficient to sustain the conclusion that a "good faith dispute" existed. (*Id.* at p. 1340.)

Similarly, the appellate court in *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221 [108 Cal.Rptr.2d 213], held that the trial court had *necessarily* concluded a bona fide dispute existed under Civil Code section 3260 where it did not find the winning side's interpretation of the contract to be the only reasonable one. (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.*, at pp. 1240–1241.) In *Alpha Mechanical*, the evidence of the builder's good faith belief in the existence of a dispute had come from the builder's witness who had testified that he *believed* the builder had overpaid the subcontractor under a specific provision in the subcontract, but "[t]here was *no* testimony that [the builder had] subjectively believed its claim had no merit, but [had] proceeded in any event." (*Alpha Mechanical, supra*, 133 Cal.App.4th at p. 1340, italics added.) Finally, in *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525 [66 Cal.Rptr.3d 175], the city was found to have had a good faith *belief* under Public Contract Code section 7107 that the contractor did not complete the work, or had completed it improperly. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale*, at pp. 533, 556.) In each of these cases, however, it was the externally observable facts in the record that were relied upon to support the trial court's conclusion that the party withholding payment "genuinely believed" a meritorious dispute with the subcontractor existed.

In our view, Pacific Construction's reliance on *Alpha Mechanical* is misplaced. That decision did not make a proper analysis of the meaning of the term "good faith dispute" as it is used in section 7108.5. While the *Alpha Mechanical* court recognized that it was presented with an issue of first impression with respect to the meaning of the term "good faith *dispute*," it limited its analysis to the abstract term "good faith." It apparently adopted

this limitation as it had found no authority "expressly interpreting the good faith dispute standard in section 7108.5 or Civil Code section 3260." (*Alpha Mechanical, supra,* 133 Cal.App.4th at p. 1339.)

*Alpha Mechanical* therefore turned to three cases applying the term "good faith" in factual contexts totally unrelated to the one presented by this case. For example, it cited *Guntert v. City of Stockton, supra,* 43 Cal.App.3d 203, where the court discussed "good faith" in contrast to a reasonableness standard for the defendant city's application of a "sole discretion" provision in the termination clause of a lease previously issued to the plaintiff lessee. The *Guntert* court simply assumed that "good faith" was to be determined by a subjective standard and contrasted it with the objective standard of reasonableness, which latter standard it then concluded should be applied in the interpretation and enforcement of the lease provision.[7] In *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918 [6 Cal.Rptr.2d 874], disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, footnote 7 [113 Cal.Rptr.3d 327, 235 P.3d 988], the court construed a statute (Code Civ. Proc., § 1038) that imposed a conjunctive burden to prove the absence of both "good faith" and "reasonable cause" as a basis for the imposition of defense costs against a party whose complaint under the Tort Claims Act (or for express or implied indemnity) had been subjected to summary disposition. Finally, *Alpha Mechanical* cited *People v. Nunn, supra,* 46 Cal.2d 460, where a doctor had been criminally charged with improperly prescribing a narcotic. One of the statutes construed by the court limited such prescriptions to cases where the doctor *believed in good faith* that the patient's condition required such medication. Obviously, in such a case, the doctor's subjective state of mind was an essential part of the case.

Relying *solely* on these three cases, the *Alpha Mechanical* court apparently concluded that the plaintiff subcontractor was required to show that the prime contractor (whose surety was the defendant insurer) did not have a good faith *belief* that the dispute over the amount claimed by the plaintiff was justified. Since the evidence was not sufficient to demonstrate such lack of belief, the award of penalty interest under section 7108.5, subdivision (b) was reversed. Thus, what the *Alpha Mechanical* court did was convert the Legislature's "good faith dispute" language into a "good faith belief" in the dispute. And it did so without making any attempt to discern the Legislature's purpose in creating an exception to penalty interest exposure for a "good faith dispute." Pacific Construction argues that the *Alpha Mechanical* analysis supports its

---

[7] The *Guntert* court concluded that the parties' intent as to the defendant city's exercise of its "sole discretion," with respect to termination of a lease, should be evaluated under a *reasonable* or *objective* standard.

argument that a subjective standard should be applied in a case such as the one before us. In our view, however, such a conclusion would be both unwarranted and unwise.

### 3. *Good Faith Can Be Subjective or Objective*

■ We do not disagree with *Alpha Mechanical* to the extent it recognized that some cases apply a subjective standard to a determination of good faith. In addition to the cases relied upon by the *Alpha Mechanical* court (e.g., *People v. Nunn, supra*, 46 Cal.2d 460), the "personal satisfaction" or "sole discretion" cases, clearly require application of a subjective standard to determine whether a party has demonstrated the satisfaction of a condition precedent to contractual liability. In *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354 [66 Cal.Rptr.2d 921], for example, this court applied a subjective test for determining a movie studio's satisfaction with the performance and production proposals of the plaintiff. The defendant movie studio was only required to exercise its subjective judgment "honestly and in good faith." (*Id.* at pp. 363, 367.) When a promissor has the power under a contract to make a purely subjective decision, that decision must be made in "good faith," but the courts will not examine its "reasonableness." (*Hall v. Webb* (1924) 66 Cal.App. 416, 422–424 [226 P. 403]; see also *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808–809 [48 Cal.Rptr.2d 747].) The *Locke* case is illustrative of the line of satisfaction cases where a subjective "good faith" test has been applied. These involve such matters as fancy, taste or judgment. (See *Mattei v. Hopper* (1958) 51 Cal.2d 119, 123–124 [330 P.2d 625].) In such cases, a party may make a subjective decision regardless of reasonableness, controlled only by the need for good faith. (*Kadner v. Shields* (1971) 20 Cal.App.3d 251, 258 [97 Cal.Rptr. 742].)

However, not all such satisfaction cases apply a subjective standard. Indeed, the objective standard is preferred unless the circumstances dictate otherwise. "Which test applies in a given transaction is a matter of actual or judicially inferred intent. [Citation.] Absent an explicit contractual direction or one implied from the subject matter, the law prefers the *objective*, i.e., reasonable person, test. [Citation.]" (*Guntert v. City of Stockton, supra*, 43 Cal.App.3d at p. 209, italics added.) Another court, more recently, endorsed this point. "The choice of objective or subjective test to evaluate a promisor's satisfaction depends upon the intent of the parties, as expressed in the language of the contract. In the absence of a specific expression in the contract or one implied from the subject matter, the preference of the law is for the less arbitrary reasonable person standard. [Citations.] The reasonableness test is especially preferable when factors of commercial value or

financial concern are involved, as distinct from matters of personal taste. [Citations.]" (*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 59–60 [122 Cal.Rptr.2d 267]; see also *Denver·D. Darling, Inc. v. Controlled Environments Construction, Inc., supra*, 89 Cal.App.4th at pp. 1240–1241 [where the court recognized that a "reasonable" (i.e., objective) standard was properly applied in determining the existence of a "bona fide" dispute under Civ. Code, § 3260, subd. (e)].)

Moreover, in other factual contexts, where the bona fides of a legal dispute are at issue, courts routinely apply an objective standard in evaluating the merits of the dispute. Four examples readily come to mind.

### a. *Malicious Prosecution Cases*

In malicious prosecution cases, the element of probable cause will be negated by evidence of the legal tenability of the claim asserted by the defendant in the prior action. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 868 [254 Cal.Rptr. 336, 765 P.2d 498].) Whether there was probable cause to institute the prior action is "to be determined by the trial court on the basis of whether, as an *objective* matter, the prior action was legally tenable or not." (*Id.* at p. 868, italics added; see also *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 495–498 [78 Cal.Rptr.2d 142].)

"Whereas the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted. [Citation.] Because the malicious prosecution tort is intended to protect an individual's interest 'in freedom from unjustifiable and unreasonable litigation' [citation], if the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail." (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 878, original italics.)

### b. *Labor Code Wage Payment Violations*

Labor Code section 203 provides for "waiting time" penalties to be imposed against an employer willfully failing to timely pay wages due an employee. The meaning of the term willful, as used in Labor Code section 203, is that an employer has intentionally failed or refused to perform an act

which was required to be done. (*Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7–8 [177 Cal.Rptr. 803].) In *Barnhill*, the court considered the impact on section 203 penalty provisions of a *dispute* as to the amount of wages actually due the plaintiff employee. Apparently, at the time of the termination of the employee's employment,. she still owed her employer a balance on a promissory note which was intended to be paid in installments by payroll deductions. (*Barnhill v. Robert Saunders & Co., supra,* at p. 4.) Because the law was not clear at the time as to whether the employer was entitled to "set off" the unpaid balance of the employee's debt, the *Barnhill* court reversed the trial court's penalty award. (*Id.* at pp. 8–9.)[8]

"*Barnhill'*s holding was memorialized in California Code of Regulations, title 8, section 13520. This regulation states: 'A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203. [¶] (a) Good Faith Dispute. A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute." ' (Cal. Code Regs., tit. 8, § 13520.)" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1201 [78 Cal.Rptr.3d 572].) This regulation imposes an objective standard.[9] In *Amaral*, it was claimed that the employer had failed to comply with a living wage ordinance. The employer raised in defense constitutional challenges to the ordinance. Although those defenses were rejected, they were neither unreasonable nor frivolous (*id.* at p. 1202) and therefore the employer was not liable for the penalty. "So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness." (*Id.* at p. 1204.)

---

[8] Although the *Barnhill* court noted that there "was no contention that appellant did not entertain a good faith belief that it was entitled to . . . a setoff" (*Barnhill v. Robert Saunders & Co., supra,* 125 Cal.App.3d at pp. 8–9), the rationale for the court's conclusion that the penalty should not be imposed was its legal determination that the law was uncertain and the appellant should not be penalized for arriving at a *reasonable* conclusion as to how it should be interpreted and applied.

[9] The appearance of the language "or are presented in bad faith" in the list of circumstances precluding a finding of a good faith dispute does not render the test a subjective one, but indicates that subjective bad faith may be of evidentiary value in the objective bad faith analysis.

### c. *Accord and Satisfaction Cases*

The affirmative defense of accord and satisfaction is applicable to the disposition of a dispute over an unliquidated claim. To succeed on such a defense, it must be established (1) that there was a "bona fide dispute" between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue. (*Potter v. Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597 [234 P.2d 16].) " '[I]t matters not that there was no solid foundation for the dispute' as the test is whether 'the dispute was honest or fraudulent.' " (*Ibid.*; see *Thompson v. Williams* (1989) 211 Cal.App.3d 566, 573 [259 Cal.Rptr. 518].) This, in context, also amounts to an objective standard as the word "honest" when juxtaposed with the word "fraudulent" conveys the meaning that the dispute must be actual, real or "bona fide."

### d. *Insurance "Genuine Dispute" Cases*

Finally, in the context of the "genuine dispute" doctrine as applied to claims of insurance bad faith, the cases hold that the issue of an insurer's bad faith depends on a showing that the insurer acted *unreasonably*. Put another way, an insurer breaches the implied covenant of good faith and fair dealing when it unreasonably delays or denies policy benefits due the insured. While two cases have suggested that this issue is determined by the application of *both* an objective and a subjective standard (see *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1238 [83 Cal.Rptr.3d 410]; *Bernstein v. Travelers Ins. Co.* (N.D.Cal. 2006) 447 F.Supp.2d 1100, 1114), the weight of California authority is to the contrary. The majority view is that in determining whether the dispute is "reasonable," the proper test to apply is an objective one. An insurer's subjective state of mind is immaterial. (See *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1239 [96 Cal.Rptr.3d 744] [While some bad faith cases speak in terms of a duty to act reasonably and in good faith, "good faith" is not a separate requirement. Rather, the insurer's subjective mental state is a "circumstance to be considered in the evaluation of the *objective* reasonableness of the insurer's actions."]; *CalFarm Ins. Co. v. Krusiewicz* (2005) 131 Cal.App.4th 273, 287 [31 Cal.Rptr.3d 619]; *Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 973 [135 Cal.Rptr.2d 718]; *Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1205 [10 Cal.Rptr.2d 352].)

The Supreme Court in *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713 [68 Cal.Rptr.3d 746, 171 P.3d 1082] appears to have reached a similar

conclusion. "In the insurance bad faith context, a dispute is not 'legitimate' *unless it is founded on a basis that is reasonable under all the circumstances.*" (*Id.* at p. 724, fn. 7, italics added; see also *McCoy v. Progressive West Ins. Co.* (2009) 171 Cal.App.4th 785, 792 [90 Cal.Rptr.3d 74] [the genuine dispute doctrine is "subsumed within the concept of what is reasonable and unreasonable"].)

As the prompt payment statutes involve the bona fides of a legal dispute, the law would appear to require an objective standard. A review of the relevant legislative history supports this conclusion.

### 4. *Legislative Purpose for Use of Term "Good Faith Dispute"*

*Alpha Mechanical* summarily concluded that good faith was a subjective issue about state of mind (*Alpha Mechanical, supra,* 133 Cal.App.4th at p. 1339), and that the trial court must find evidence in the record that circumstantially shows the contractor *honestly believed* that a valid dispute with the subcontractor existed over the amount owed. (*Ibid.*) Yet, as indicated, *Alpha Mechanical* provided no persuasive analysis of the legislative intent behind section 7108.5, nor any justification for its conclusions other than the three unrelated older cases briefly summarized above. It is true that a subsequent case noted, without comment or analysis, that *Alpha Mechanical* had reached such a decision. (*Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc., supra,* 179 Cal.App.4th at p. 1411, fn. 5.) That case, however, dealt with a different issue[10] and quoted from *Alpha Mechanical* in a footnote in order to illustrate the point that courts had equated the term "bona fide dispute" with "good faith dispute."

In our view, *Alpha Mechanical*'s discussion and conclusion are inconsistent with the Legislature's apparent purpose in enacting the several prompt payment statutes (see fns. 4 & 5, *ante*), including section 7108.5. The prompt payment statutes were intended to serve a "remedial purpose: to encourage general contractors to pay timely their subcontractors and to provide the subcontractor with a remedy in the event that the contractor violates the statute." (*Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 720 [104 Cal.Rptr.2d 815].) In its analysis of Assembly Bill No. 2620 (the Assembly bill that amended § 7108.5), the Senate Committee on the Judiciary noted that the provisions of section 7108.5,

---

[10] The *Martin Brothers* court was concerned with whether the provisions of Public Contract Code section 7107, subdivision (e) were applicable to a dispute over the amount due as a result of "change orders." The meaning of the term "bona fide dispute" used in Public Contract Code section 7107, subdivision (e) was not in issue or considered. (*Martin Brothers Construction, Inc. v. Thompson Pacific Construction, Inc., supra,* 179 Cal.App.4th at pp. 1401, fn. 1, 1411–1412, fn. 5.)

subdivision (c), would provide "some leeway" for a general contractor when there was a dispute as to the amount due. "The language would establish a *clear standard* for amounts that a prime contractor could retain in cases of disputes, while also ensuring that litigation does not ensue over de minimis amounts." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2620 (1989–1990 Reg. Sess.) May 22, 1990, italics added). Given these legislative goals, the recognition of a subjective standard for determining the existence of a "good faith dispute" is not only inappropriate, but also places an unnecessary additional burden on the plaintiff subcontractor to prove the state of mind of the nonpaying general contractor. As the trial court clearly recognized here, establishing a party's state of mind will, in most cases, require the introduction of evidence demonstrating that the dispute does not have objective merit.

### 5. *An Objective Standard Applies Here*

■ While there are some cases where a subjective standard may properly be applied to evaluate the legal consequences of a party's actions, such application is appropriate only in a limited number of circumstances and only then when it is consistent with the intention of the parties. To do as the *Alpha Mechanical* court did and lift general abstract language from prior cases, free of their foundational factual context, is misleading and contributes to considerable confusion. It seems clear that what the statutory language here at issue was intended to describe was the bona fide existence of an actual legal dispute over the amount due under a construction contract. If such a dispute did exist then the nonpaying party would have a defense to the imposition of penalty interest liability on the amount at issue in such a dispute.

There is no practical justification for construing the undefined statutory use of terms adjectively characterizing a legal dispute as one raised in "good faith" or with "bona fides" so as to require a *subjective* analysis of the nonpaying party's state of mind or motives. As we have indicated, the apparent legislative purpose was to make sure that when a prime contractor withheld some portion of a promised payment, such retention was based on a real or actual dispute as to the amount owed. Whether the nonpaying party might ultimately be vindicated is not the issue. The critical question should be the legal tenability of the justification for nonpayment that was asserted. There simply is no reason to apply here the standards common to the state of mind, personal satisfaction or sole discretion cases. A *legal dispute* between two parties exists, is "legitimate," "genuine," "bona fide," or in "good faith"

where the arguments asserted or positions taken have *objective* legal tenability. Nothing more should be required.[11]

■ Thus, the proper standard to be applied to the question of whether there was a "good faith dispute" is, in our view, objective, not subjective. To do otherwise leads not only to potential mischief but also ignores the reality that the evaluation of the dispute will, in actuality, be based on the examination of objective facts and circumstances which will or will not demonstrate that an objectively reasonable basis existed for the nonpaying party's action. Certainly, a party who has no reasonable, objective justification for withholding payment under a construction contract, but "believes," by reason of delusion, ignorance, negligence of legal counsel or otherwise, that the money is not owed should not be able to avoid penalty interest on such ground.

As is illustrated by many of the "good faith" cases discussed earlier, there is a significant lack of coherence or consistency among the decisions that have attempted to address this issue. There are some cases where it is appropriate, or even critical, to consider a party's state of mind (e.g., *People v. Nunn, supra,* 46 Cal.2d 460). That is not the case here, where we are concerned with determining the legitimacy of a legal dispute. The Legislature certainly intended to allow a contractor to retain payments otherwise payable to a subcontractor only if there was an actual "bona fide" dispute over the amount due. The subjective "belief" of the nonpaying party may be of evidentiary interest, but should not be the standard for evaluating the merits of the dispute.

### 6. *Application of These Principles*

In this case, the subcontracts directed that "Payment[s] are to be made in monthly installments for work performed the preceding month on or before five (5) days after payment is received by Contractor from Owner. . . ." FEI's complaint alleged Pacific Construction owed it $18,400 and $7,300 for the Gramercy and Manhattan Place Projects, respectively. FEI alleged it was

---

[11] It should not matter whether the dispute is characterized as "honest," "legitimate," "bona fide" or as one asserted in "good faith." These terms all reflect the need for *objective* evidence demonstrating that there is a *reasonable basis* for the nonpaying party's actions. If there is an objectively reasonable basis for the delay or denial of a promised progress payment, the statutory requirement of "a good faith dispute" will have been satisfied and the actual subjective state of mind of the nonpaying party will not be relevant except as a circumstance to be considered in the evaluation of the objective reasonableness of the nonpaying party's actions.

entitled to statutory penalties for late progress payments under section 7108.5, subdivision (c) and retention payments under Civil Code section 3260, subdivision (e).[12]

In its statement of decision, the trial court found that Pacific Construction disputed that it owed FEI money based on Yoon's interpretation of the subcontracts, and on his contention that FEI had failed to complete the rough work in a timely manner, forcing him to pay for the completion of FEI's work. Based on the record, the court could not find that "Yoon subjectively believed [his] claim had no merit, but proceeded in any event." Accordingly, the court found there was a good faith dispute as to the moneys owed and declined to award prompt payment penalties.

■ The evidence supports the trial court's conclusion if not its rationale: First, the parties litigated their divergent understanding of the meaning of two phrases in the subcontracts. The court found the subcontracts' clauses at issue to be ambiguous and inferentially that FEI's interpretation was not the only reasonable one. (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc., supra,* 89 Cal.App.4th at pp. 1240–1241.) Second, Pacific Construction maintained that FEI did not complete the work required under the subcontracts and went so far as to retain and pay another company to complete the work it believed FEI did not finish. While the trial court purported to apply a subjective standard and weighed the evidence to determine the subjective existence of good faith, it did so based on objective and extrinsically observable evidence. Such evidence supports the trial court's conclusion that there was a good faith dispute between Pacific Construction and FEI as to what the subcontracts required of FEI and whether FEI fully performed its rough-work obligations. Determined according to an objective standard, there was thus a good faith dispute over amounts owed and the court properly denied FEI's request for penalties.[13]

### C. *FEI's Request for Sanctions*

■ FEI seeks to impose sanctions against Yoon and Pacific Construction's counsel for prosecuting a frivolous appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) The sanctions request was presented in FEI's brief, not by motion with supporting declaration, and thus did not comply with California Rules of Court, rule 8.276(b)(1). We do not consider it further.

---

[12] Pacific Construction contends that the current version of Civil Code section 3260 is inapplicable to this case. We need not address this contention because the trial court found a good faith dispute, so penalties would not have been awardable under Civil Code section 3260, subdivision (e) in any event.

[13] Although we hold that FEI was correct in its contention that an objective standard should be applied, it makes no difference in the outcome of this case as the trial court correctly, and necessarily, relied on substantial *objective* evidence in reaching its conclusion.

## *DISPOSITION*

The trial court's judgment and order are affirmed. Each party shall bear their own costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.