Filed 5/28/25  ANE Holdings v. Purity Preserved CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANE HOLDINGS, LLC et al., | D083065 |
| Plaintiffs and Respondents, | |
| PURITY PRESERVED, LLC, | (Super. Ct. No. CVPS2102620) |
| Plaintiff and Appellant; | |
| v. | |
| JOSEPH RUBIN et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Godofredo Magno, Judge.  Affirmed.

McGarrigle, Kenney & Zampiello and Patrick C. McGarrigle for Defendant and Appellant Joseph Rubin, individually and as trustee of the Licht 2018 Irrevocable Trust.

Orsus Gate, Denis Shmidt, Nabil Bisharat; Salvato Boufadel, Gregory M. Salvato and Joseph Boufadel for Defendants and Appellants DLJJ, LLC and DDS CA, LLC.

O'Kane Law, Laura J. O'Kane, and Christopher W. Kelly for Plaintiff and Cross-appellant Purity Preserved, LLC.

Austin Legal Group, Tamara M. Rozmus and Gina M. Austin for Plaintiffs and Respondents ANE Holdings and MIYA Lighthouse PS.

INTRODUCTION

Joseph Rubin, individually and as trustee of the Licht 2018 Irrevocable Trust (Rubin), DLJJ, LLC (DLJJ), and DDS CA, LLC (DDS) (collectively, Defendants) appeal the trial court's order denying Rubin's special motion to strike the operative complaint under Code of Civil Procedure[1] section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. DLJJ and DDS (together, Entity Defendants) also seek to appeal the denial of their motion for joinder in Rubin's anti-SLAPP motion.

Defendants contend the trial court (1) abused its discretion in denying the motion as untimely; (2) abused its discretion by overruling Rubin's objection to evidence submitted in opposition to the anti-SLAPP motion; and (3) erred in denying the anti-SLAPP motion on the merits. The Entity Defendants separately argue they have standing to appeal the denial of Rubin's anti-SLAPP motion because they filed a proper motion for joinder.

In addition, one of the plaintiffs in the instant matter, Purity Preserved, LLC (Purity), brings a cross-appeal arguing, among other issues, that the trial court abused its discretion in failing to award attorney fees to Purity and the other two plaintiffs, ANE Holdings, LLC (ANE) and MIYA Lighthouse PS (MIYA) (ANE, MIYA, and Purity collectively, Plaintiffs).

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

2

We conclude the trial court did not abuse its discretion in finding that Rubin's anti-SLAPP motion was untimely. Accordingly, we do not reach the other issues raised by Defendants. Nor do we address the Entity Defendants' claim regarding the court's denial of their motion for joinder. Also, we determine that the court properly exercised its discretion in denying attorney fees to Plaintiffs. We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The Lighthouse Palm Springs, LLC (Lighthouse) is a California limited liability company with its principal place of business in Palm Springs, California. Lighthouse sells adult use and medical cannabis under a permit with the City of Palm Springs and a license with California's Department of Cannabis Control. Plaintiffs are each members of Lighthouse. Rubin served as Lighthouse's manager from November 2018 through April 19, 2021, when he was removed by member vote. Rubin's sister, Lauren Rubin Heimer (Heimer), replaced Rubin as Lighthouse's manager.

Plaintiffs claim they uncovered "malfeasance in late 2020 to early 2021 and began demanding information and documents to explain the misconduct." Plaintiffs allege that Rubin, Heimer, A. Stuart Rubin (Stuart),[2] and others failed to make promised capital contributions to Lighthouse, stole at least $1.5 million, unlawfully commingled money, manufactured financial statements to hide their misappropriation, filed fraudulent tax returns, and entered into self-dealing contracts and agreements for their own benefit and to the detriment of Lighthouse.

After Rubin, Heimer, and Stuart failed to adequately respond to Plaintiffs' requests for information, Plaintiffs filed a derivative complaint in

---

[2] Stuart is the father of Rubin and Heimer. He allegedly controls various entities and trusts that figure in the instant dispute.

3

May 2021, naming Rubin, Heimer, Stuart, Entity Defendants,[3] and other defendants.[4] Lighthouse was named as a nominal defendant.

Plaintiffs amended that complaint on August 24, 2021. In the first amended complaint, Plaintiffs alleged 10 causes of action based upon Plaintiffs' investments in Lighthouse and the named defendants' respective misdeeds related to the management of Lighthouse as well as their failures to make further financial contributions as promised.

On February 7, 2022, Rubin answered the first amended complaint.

On March 23, 2022, Plaintiffs filed a motion to appoint a receiver over Lighthouse, which was supported by multiple declarations and documents. Rubin and other defendants opposed this motion.

On April 11, 2022, Entity Defendants filed an answer to the first amended complaint.

On May 17, 2022, the trial court granted Plaintiffs' motion and appointed a receiver over Lighthouse.

On August 2, 2022, Entity Defendants filed a motion for judgment on the pleadings as to the first amended complaint, claiming that the first amended complaint did not adequately allege causes of action against them. Over two months later and more than a year after the first amended complaint was filed, Plaintiffs filed a second amended complaint, which is the operative complaint here. That complaint did not include any new causes of action.

---

[3]    In the original complaint, DDS was sued under its trade name, Doobie.

[4]    Because these other named defendants do not factor into our analysis here, and we do not need to introduce them to provide context, we do not discuss them.

In response to the second amended complaint, Rubin filed an anti-SLAPP motion, which he later amended. In that motion, Rubin argued Plaintiffs had amended the complaint to allege "protected activity" under section 425.16, and that Plaintiffs could not show a probability of success on the merits. Specifically, Rubin claimed the second amended complaint was focused on "protected litigation activities," namely filing a tax return. Further, Rubin listed paragraphs 3, 58, and 138 through 141 as specifically containing the allegations of protected activity.

Rubin acknowledged that the first amended complaint contained the same allegations based on tax filings as the second amended complaint, but he argued he could not have filed the anti-SLAPP motion any earlier because the "on-point Court of Appeal decision in *Li v. Jin* (2022) 83 Cal.App.5th 481 [(*Li*)] . . . was . . . published" well after the first amended complaint was filed. In further support of his argument that the filing of tax returns is a protected activity under section 425.16, Rubin argued that "California [c]ourts have found that submissions and filings with the government agencies . . . are protected activity under . . . [section] 425.16." To this end, in addition to *Li*, Rubin relied on other California cases, such as *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993 (*ComputerXpress*), *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 (*Fontani*), and *Hawran v. Hixson* (2012) 209 Cal.App.4th 256 (*Hawran*).

Plaintiffs opposed the anti-SLAPP motion, arguing the motion was untimely. Plaintiffs asserted that *Li*, *supra*, 83 Cal.App.5th 481 was not new law and did not provide a novel argument to Rubin that did not exist at the time the first amended complaint was filed. Plaintiffs also claimed the filing of tax returns is not a protected activity. Finally, Plaintiffs maintained they had already demonstrated success on the merits by prevailing on their

motion to appoint a receiver. Therefore, they offered many of the same declarations and largely the same evidence that they submitted in support of their motion for a receiver.

In addition to filing a reply in support of the anti-SLAPP motion, Rubin made a single objection to almost the entirety of the evidence Plaintiffs submitted in support of their opposition.

Entity Defendants filed a motion for joinder to Rubin's anti-SLAPP motion.[5] In their notice of motion, Entity Defendants stated they were joining Rubin's anti-SLAPP motion and adopting "all of the arguments and evidence submitted by Mr. Rubin in support of same." Entity Defendants asserted that the reasoning in Rubin's anti-SLAPP motion "applie[d] equally to [Entity Defendants] as the allegations against [Entity Defendants] are duplicative of the allegations made against Mr. Rubin and are largely based on a claim that [Entity Defendants] are Mr. Rubin's alter-ego." Entity Defendants also requested "an order striking the Second Amended Complaint as to" Entity Defendants and asked for "their costs and attorneys' fees in bringing a special motion to strike."

After considering the motion, opposition, reply, and the evidence submitted in support of and opposition to the anti-SLAPP motion, the trial court denied the motion on the grounds that it was untimely. In doing so, the court agreed with Plaintiffs that *Li*, *supra*, 83 Cal.App.5th 481 "did not present new law."

The court also addressed the anti-SLAPP motion on the merits. To this end, it overruled Rubin's objection and found that Plaintiffs had shown a probability that they would prevail on their claims against Rubin.

---

[5] Although Stuart also filed a motion for joinder, he is not a party to this appeal.

6

The court also denied the motion for joinder, noting that Entity Defendants did not provide any additional arguments or evidence in support of the anti-SLAPP motion. Rather, they relied completely on the arguments made in Rubin's anti-SLAPP motion.

Finally, the trial court did not award Plaintiffs attorney fees because it did not conclude that Rubin's motion was "totally without merit or frivolous, and there [was] no evidence that the motion was filed to cause unnecessary delay."

## DISCUSSION

### I.

### *No Abuse of Discretion in Trial Court's Finding that*
### *Rubin's Anti-SLAPP Motion Was Untimely*

A. *Basic Principles of Anti-SLAPP Law*

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The anti-SLAPP statute provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "The Legislature enacted section 425.16 to prevent and deter lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. Because these meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPPs by ending them early and without great cost to the

7

SLAPP target. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 641, 642 (*Newport Harbor Ventures*) [cleaned up].)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims aris[e] from protected activity in which the defendant has engaged. If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least minimal merit." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 [cleaned up].)

B.      *Time Restraints Regarding the Filing of Anti-SLAPP Motions*

An anti-SLAPP motion must be filed "within 60 days of the service of the complaint or, in the court's discretion, at any time upon terms it deems proper." (§ 425.16, subd. (f).) The purpose of the statutory time limitation is to permit "the defendant to test the foundation of the plaintiff's action before having to devote its time, energy and resources to combating a meritless lawsuit" and "to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings." (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 783 (*Platypus Wear*) [cleaned up].)

An anti-SLAPP motion directed to an amended complaint may not seek to strike allegations or dismiss causes of action that have been included in earlier complaints. (*Newport Harbor Ventures, supra*, 4 Cal.5th at pp. 639–640.) "An amended complaint reopens the time to file an anti-SLAPP motion without court permission only if the amended complaint pleads new causes of

action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion." (*Id.* at p. 641 [cleaned up].)

We review a trial court's denial of an untimely anti-SLAPP motion under an abuse of discretion standard. (*Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1542–1543.)

C. *The Trial Court Did Not Abuse Its Discretion in Finding the Anti-SLAPP Motion Untimely*

In Rubin's anti-SLAPP motion, he asked the trial court to strike allegations in paragraphs 3, 58, and 138 through 141 of the second amended complaint, arguing such allegations arise out of protected activity, namely the filing of tax returns.[6] However, the allegations Rubin challenged in his anti-SLAPP motion are identical to allegations that existed in the first amended complaint. He does not dispute this. Paragraphs 3, 58, and 138 through 141 of the second amended complaint are identical to paragraphs 3, 56, and 125 through 128 of the first amended complaint. The first amended complaint was filed on August 24, 2021. The second amended complaint was

---

[6] Rubin also asked the trial court to strike every cause of action in the second amended complaint, maintaining that each cause of action was based on the filing of tax returns. Rubin grounded this argument on the fact that specific paragraphs referencing tax returns, tax shelters, and tax fraud were incorporated into each cause of action. While such allegations were incorporated into the various causes of action, it is a stretch to claim that each cause of action is predominately based on the filing of tax returns. There are a myriad of other allegations of untoward conduct independent of any tax return. At most, the incorporation of the tax related allegations might have made each cause of action "mixed," meaning the claims consist of both unprotected and protected activity under section 425.16. (See *Baral, supra,* 1 Cal.5th at p. 393.) We need not delve deeper into this issue because, as we shall explain, we agree with the trial court that Rubin's motion was untimely.

9

filed on October 5, 2022. Rubin filed his anti-SLAPP motion on December 1, 2022, over a year after Plaintiffs first made the allegations that Rubin argues involve protected activity under section 425.16.

This situation comes squarely within the rule of *Newport Harbor Ventures, supra*, 4 Cal.5th 637. In that case, the plaintiffs sued the defendants for several causes of action, including breach of a written contract and breach of the implied covenant of good faith and fair dealing. (*Id.* at p. 640.) The complaint alleged the defendants had fraudulently settled an unlawful detainer action involving the real property that was subject to a sublease. (*Ibid.*) Over two years later, the plaintiffs filed a third amended complaint, which also alleged the defendants had fraudulently settled the unlawful detainer action. (*Ibid.*) The third amended complaint contained the same causes of action for breach of written contract and breach of the implied covenant of good faith and fair dealing contained in the original complaint and added, for the first time, causes of action for quantum meruit and promissory estoppel. (*Ibid.*)

Within 60 days of the filing of the third amended complaint, the defendants filed an anti-SLAPP motion. (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 640.) The trial court denied the motion on the ground that it was untimely. (*Ibid.*) The court noted the complaint and every pleading filed by the plaintiffs thereafter referred to the settlement agreement as "at the heart" of the defendants' allegations. (*Ibid.* [cleaned up].) Our colleagues in Division Three of this District affirmed that part of the trial court's ruling. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evang*elism (2016) 6 Cal.App.5th 1207, affd. *Newport Harbor Ventures, supra*, 4 Cal.5th 637.) The appellate court held the third amended complaint did not reopen the time to file an anti-SLAPP motion without trial court permission because the

10

amended complaint did not plead new causes of action that could not have been the target of a prior anti-SLAPP motion and did not add new allegations that would make previously pleaded causes of action subject to an anti-SLAPP motion. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism, supra*, 6 Cal.App.5th at p. 1219.)

The California Supreme Court affirmed the judgment and adopted the holding of Division Three's opinion. (*Newport Harbor Ventures, supra*, 4 Cal.5th at p. 646.) Like Division Three, our high court recognized that granting a defendant an absolute right to bring an anti-SLAPP motion against an amended complaint "would encourage gamesmanship that could defeat rather than advance" the purpose of ending meritless SLAPPs early in the litigation. (*Id.* at p. 644 [cleaned up].) The Supreme Court explained: "In this case, as the trial court noted when it exercised its discretion to deny a late filing, much litigation, including discovery, had already been conducted for two years before the anti-SLAPP motion brought it to a halt. It is far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively. . . . To minimize this problem, section 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion). This interpretation maximizes the possibility the anti-SLAPP statute will fulfill its purpose while reducing the potential for abuse." (*Newport Harbor Ventures*, at p. 645.)

The same result obtains here. The filing of the second amended complaint did not reopen the 60-day period for Rubin to bring an anti-SLAPP motion because that motion could have been brought earlier. Rubin could have moved to strike paragraphs 3, 56, and 125 through 128 from the first

11

amended complaint but chose not to do so.  The anti-SLAPP motion to strike paragraphs 3, 58, and 138 through 141 of the second amended complaint was over a year after service of the first amended complaint and was therefore untimely.  Further buttressing our determination that Rubin's anti-SLAPP motion was untimely, we note that, in between the filing of the first and second amended complaints, the parties engaged in extensive discovery and the trial court appointed a receiver over the Lighthouse.  Thus, Rubin's tardy anti-SLAPP motion could not fulfill the statute's purpose of resolving the instant matter promptly and inexpensively.  (See *Newport Harbor Ventures, supra*, 4 Cal.5th at p. 645; *Platypus Wear, supra*, 166 Cal.App.4th at p. 783.)

Our conclusion does not change if we consider *Li, supra*, 83 Cal.App.5th 481 as Rubin urges us to do.  In that case, the appellate court determined that applying to the Internal Revenue Service (IRS) for tax-exempt status is protected activity under section 425.16, subdivision (e)(1) and (2), because the IRS's review of the application "is not purely ministerial." (*Li*, at pp. 487, 491–492.)  As he did in the trial court, Rubin argues that *Li* represented new law because previous cases were "silent of the subject of tax filings and [s]ection 425.16's protected activity." Further, because *Li* was not issued until August 19, 2022, almost a year after the first amended complaint was filed, Rubin claims the trial court abused its discretion in finding Rubin's anti-SLAPP motion was untimely when he filed his motion after the second amended complaint was filed.

We disagree with Rubin's reading of *Li*.  There, the court was concerned with a very specific act involving the IRS—filing a request for tax-exempt status.  Such a request requires the IRS to take action to determine whether an entity should be classified as tax-exempt.  Here, the allegations Rubin challenges are not similar.  Instead, he argues that Plaintiffs are

12

basing claims on the mere filing of a tax return. The filing of taxes usually only results in ministerial acts of review by the IRS, rather than an official IRS proceeding like the determination of tax-exempt status. Moreover, except for the bald assertion that they are the same, Rubin offers no compelling argument that we should treat the request for the IRS to determine whether an entity should be classified as tax-exempt and the simple filing of a tax return as equivalent activities. In other words, *Li* does not stand for the proposition that the filing of a tax return is a protected activity under section 425.16.

Further, Rubin's other arguments that the filing of tax returns constitutes protected activity undermine his claim that *Li* was new law. Rubin argued below, as he does here, that California courts have found submissions and filings with government agencies to be protected activity under section 425.16. To support his assertion, Rubin relies on case law that predates both *Li* and Plaintiffs' first amended complaint. (E.g., *ComputerXpress, supra*, 93 Cal.App.4th at p. 1009 [concluding statements made to the Securities and Exchange Commission were protected under section 425.16]; *Fontani, supra*, 129 Cal.App.4th at pp. 725, 728 [concluding that the defendant's report to the National Association of Securities Dealers on a Form U-5, describing the reasons for the plaintiff's termination, was protected activity under section 425.16]; *Hawran, supra*, 209 Cal.App.4th at p. 269 [statements made in Form 8-K filing was protected under section 425.16].) None of these cases concern the filing of a tax return, and neither does *Li*. Rather, these cases, much like *Li*, offer support for Rubin's argument that certain filings and submissions with government agencies can be protected activity under section 425.16. The general principle on which

Rubin claims the filing of tax returns is a protected activity existed far before Plaintiffs filed and served the first amended complaint.

Against this background, we agree with the trial court that Rubin's anti-SLAPP motion was untimely, and the court did not abuse its discretion in denying the motion for that reason.[7] Because we resolve Rubin's appeal on this issue, we need not address his other claims of error. Additionally, as Entity Defendants do not add any additional arguments as to why the trial court erred in denying Rubin's anti-SLAPP motion and simply contend the court erred in failing to grant their joinder motion, we do not reach that issue either.

## II.

*No Abuse of Discretion in Trial Court's Denial of Attorney Fees to Plaintiffs*

Purity argues that the trial court erred in two ways. First, Purity contends the court incorrectly concluded that the filing of tax returns is protected activity under section 425.16. Second, Purity maintains the court abused its discretion in declining to award Plaintiffs attorney fees after successfully opposing the anti-SLAPP motion. We address, and reject, each argument in turn.

The trial court concluded the filing of a tax return was protected activity under section 425.16, subdivision (e)(1) and (2). Purity argues this conclusion was error and urges us to follow *City of Industry v. City of Filmore* (2011) 198 Cal.App.4th 191 (*City of Industry*). We need not resolve this dispute because, as we have concluded, the trial court did not abuse its

---

[7] Even if we were to agree with Rubin that *Li* was new law, Rubin's timeliness argument still does not add up. Section 425.16, subdivision (f), provides a 60-day time limit in which to file an anti-SLAPP motion to strike allegations based on protected activity. Rubin's anti-SLAPP motion was filed 104 days after *Li* was issued. Rubin offers no explanation for this delay.

14

discretion in denying Rubin's anti-SLAPP motion as untimely. Thus, we do not address the merits of Rubin's anti-SLAPP motion and need not weigh in on the determination of whether the filing of tax returns constitutes protected activity under section 425.16. Put another way, the resolution of that issue will have no bearing on our conclusion that the trial court did not abuse its discretion in denying the anti-SLAPP motion as untimely. And as we explain next, the determination of whether the filing of tax returns is protected under section 425.16 is not essential to our resolution of Purity's claim that the trial court should have awarded Plaintiffs attorney fees.

Under section 425.16, subdivision (c)(1), "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Under subdivision (a) of section 128.5, "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." "Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit." (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 932; see § 128.5, subd. (b)(2) ["[f]rivolous means totally and completely without merit or for the sole purpose of harassing an opposing party"] [cleaned up].)

We review an order approving or denying attorney fees pursuant to section 128.5, as incorporated in section 425.16, subdivision (c), for abuse of discretion. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199.) "A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was

15

abused." (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 37 [cleaned up].)

The trial court here did not award Plaintiffs attorney fees, finding "the anti-SLAPP motion was not totally without merit or frivolous, and there is no evidence the motion was filed to cause unnecessary delay." In conclusory fashion, Purity claims Rubin's anti-SLAPP motion was brought over a year after the tax related allegations appeared in the first amended complaint, the motion caused "months of unwarranted delay and expense," and in response to "reams of documentary evidence supporting Purity' claims," Rubin "offered only a single 'shotgun' objection[,] which was both procedurally defective and substantively opaque." Based on these arguments, Purity contends the anti-SLAPP motion was either frivolous or brought to cause unnecessary delay. We are not persuaded the trial court abused its discretion.

The fact that Rubin's anti-SLAPP motion was untimely, in and of itself, is not sufficient to justify a finding that the motion was frivolous. After all, a trial court has discretion to consider an anti-SLAPP motion even if it is filed more than 60 days after service of the complaint. (See § 425.16, subd. (f).) Additionally, we fail to see the significance of Rubin only filing a single, omnibus objection to the evidence offered in opposition to the anti-SLAPP motion. Purity has provided no authority that the frivolousness of an anti-SLAPP motion is contingent on the quality of the moving party's objections.

Also, the trial court's determination that Rubin satisfied the first prong of the anti-SLAPP test further supports the court's conclusion that the motion was not completely without merit. In the process of explaining why *Li, supra*, 83 Cal.App.5th 481 did not constitute new law, the court carefully

16

described how it determined the filing of tax returns is protected activity under section 425.16, subdivision (e)(1) and (2). And it did so by citing to federal statutes and distinguishing *City of Industry, supra*, 198 Cal.App.4th 191. Even if we were to come to a different conclusion regarding the protected status of tax returns, the court's rational approach underscores that the issue was, at the very least, reasonably debatable. Consequently, Rubin was not making a frivolous argument.

We also conclude Purity's bare assertion that Rubin's anti-SLAPP motion necessitated months of "unwarranted delay" is not of the moment. Purity does not support its argument with any legal analysis or citation to the record. This is improper. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 ["to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"].) This shortcoming is fatal because the trial court explicitly found no evidence that Rubin filed the anti-SLAPP motion to cause unnecessary delay. Under the abuse of discretion standard, we review the court's factual findings for substantial evidence. (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 551.) Purity ignores this standard. It does not explain why the trial court's finding is not supported by substantial evidence. For that reason alone, Purity's assertion that the anti-SLAPP motion was brought to cause unnecessary delay fails. (*City of Santa Maria*, at p. 287.)

Finally, Purity contends "it appears that Rubin filed this appeal to delay these proceedings further." Purity then requests we remand this matter with instructions to award Plaintiffs their attorney fees and costs on appeal. Although the attorney fees that are recoverable under the anti-SLAPP statute include appellate fees (*Carpenter v. Jack in the Box Corp.*

17

(2007) 151 Cal.App.4th 454, 461), because we conclude the trial court did not abuse its discretion in declining to award attorney fees to Plaintiffs, we see no basis on which to award them fees for the instant appeal. And to the extent that Purity is arguing that sanctions for a frivolous appeal are warranted, we disagree.

"An appeal is frivolous when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. Counsel and their clients have a right to present issues that are arguably correct. An unsuccessful appeal should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit . . . , involves facts which are not amenable to easy analysis in terms of existing law . . . , or makes a reasoned argument for the extension, modification, or reversal of existing law." (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1062 [cleaned up].)

Purity's sanctions request, to the extent it is making one, is presented in its respondent's and cross-appeal opening brief and not by motion with a supporting declaration. Consequently, the sanctions request does not comply with California Rules of Court, rule 8.276(b)(1). (See *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807 [declining to consider sanctions request on appeal for failure to comply with Cal. Rules of Court, rule 8.276(b)(1)].) In any event, from its arguments alone, Purity fails to persuade us that the appeal was brought "solely" to cause unnecessary delay (§ 425.16, subd. (c)(1)) and is indisputably without merit. We deny Purity's request for attorney fees under the anti-SLAPP statute.

18

DISPOSITION

The order is affirmed.  In the interest of justice, the parties are to bear their own costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(5).)


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.